UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NEB MORROW, III,
                Plaintiff,
v.

SUPERINTENDENT CAPRA, FIRST
DEPUTY SUPERINTENDENT WINSHIP,
DEPUTY SUPERINTENDENT SECURITY
ROYCE, C.O. MALAVE, ALL CAPTAINS ON
DUTY FOR A-BLOCK FOR 10/12/18-
10/15/18, ALL LIEUTENANTS ON DUTY
FOR A-BLOCK FOR 10/12/18-10/15/18,
CORRECTIONAL OFFICERS ON DUTY
FOR L-GALLERY FOR 10/12/18-10/15/18,
C.O. JOHN DOE FOR H-GALLERY SOUTH
ON 10/12/18, C.O. JOHN DOE FOR L-
GALLERY ON 10/15/18, and OFFICER IN
CHARGE FOR A-BLOCK FOR 10/12/18-
10/15/18, in their individual and official
capacities,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 9749 (VB)

Briccetti, J.:

      Plaintiff Neb Morrow, III, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against the following defendants at Sing Sing Correctional Facility ("Sing Sing"): Superintendent ("Supt.") Capra; First Deputy Supt. Winship; Deputy Supt. of Security Royce; Correction Officer ("C.O.") Malave; and numerous unnamed prison officials including all Captains, Lieutenants, and Correction Officers assigned to plaintiff's housing block from October 12 to 15, 2018. Liberally construing plaintiff's filings, he asserts claims of deliberate indifference under the Eighth Amendment, First Amendment retaliation, and negligence under state law.

1

Now pending are (i) defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) (Doc. #22), and (ii) plaintiff's motion for leave to file a supplemental complaint pursuant to Rule 15(d) (Doc. #30).

For the reasons set forth below, defendants' motion is GRANTED, and plaintiff's motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and its exhibits and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff was a convicted inmate housed at Sing Sing at all relevant times. He commenced this action by complaint dated October 17, 2018, concerning events that allegedly transpired in the preceding five days. (Doc. #2). He then filed an amended complaint docketed on December 21, 2018 (Doc. #13 ("Am. Compl.")), and a proposed supplemental complaint docketed on April 8, 2019 (Doc. #30 ("Supp. Compl.")).

Plaintiff alleges that on October 12, 2018, windows in his housing block were kept open despite outdoor temperatures of "approximately 40º." (Am. Compl. ¶ 1). He allegedly asked C.O. Malave and nonparty C.O. Vance, and then an unknown prison guard sued as John Doe, to close the windows; they did not do so. Another guard, whom plaintiff names as "John Doe . . . posted on H-Company, South," allegedly told plaintiff the windows were kept open "because of ventilation needs." (Id. ¶ 7).

Plaintiff claims the windows stayed open that night and through the next day, forcing him to sleep overnight in "long johns," "state pants," two sweaters, a "thermal shirt," a t-shirt, and a

coat, and under a blanket, bedsheet, and two towels. (Am. Compl. ¶ 10). He says he was "basically tortured by these cold temperatures" and continued to complain about them to C.O. Malave. (Id. ¶ 5).

Two days later, on October 14, 2018, plaintiff alleges the windows were closed. Sometime that day, C.O. Malave allegedly searched plaintiff's cell in retaliation for plaintiff's complaints, "and as a warning not to file any complaints" about the temperature. (Am. Compl. ¶ 18).

On October 15, 2018, the windows were allegedly reopened, making plaintiff's housing block cold once more. Plaintiff claims prison officials assigned to his housing block were "fully geared in hats, sweaters and jackets." (Am. Compl. ¶ 21). Later that day, plaintiff alleges "prison guard John Doe" told plaintiff that if he complained about the cold, he would "be moved to a cell that doesn't have an open window in front of it." (Id. ¶ 16).

Plaintiff filed a grievance that day about the temperature. He alleges he later wrote "two complaints to Superintendent Capra to no avail." (Id. ¶ 27).

According to plaintiff, on October 16, 2018, the heat in his housing block was turned on. However, he claims this should have occurred on October 15, 2018, pursuant to Sing Sing policy, and that Sing Sing's maintenance supervisor acted negligently by turning on the heat a day late.

In his proposed supplemental complaint, plaintiff further alleges that despite his numerous complaints to Supt. Capra and other prison officials, the windows in plaintiff's housing block frequently remained open through March 5, 2019, exposing plaintiff "to bitter cold for a six-month period." (Supp. Compl. ¶ 33). For example, on November 21, 2018, plaintiff alleges the windows were left open despite an outdoor temperature of "20º with a 5º

3

wind chill." (Id. ¶ 7). He claims the cold temperatures have caused him to suffer health problems including shivering, worsened asthma, and contracting a cold six times.

In subsequent filings, plaintiff states the windows stayed open after March 5, 2019. He also claims Supt. Capra told plaintiff on March 5, 2019, "There are 600 men on the block. Some like it cold, some like it hot. So it's preferred to let the windows remain open to get the germs out the block." (Supp. Compl. ¶ 20).

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability

---

[1] Unless otherwise indicated, case quotations omit all citations, internal quotation marks, footnotes, and alterations.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe a pro se litigant's submissions and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges a civil rights violation. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

## II. Exhaustion of Administrative Remedies

Defendants argue the Court should dismiss plaintiff's Eighth Amendment claim arising from the allegedly cold temperatures for failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The Court agrees.

### A. Legal Standard

The PLRA provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Dismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is

5

evident on the face of the complaint." Pratt v. City of New York, 929 F. Supp. 2d 314, 318 (S.D.N.Y. 2013).

"Section 1997e(a) requires proper exhaustion—that is, using all steps that the agency holds out, and doing so properly." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011). In New York State, the applicable local rules are set forth in the Inmate Grievance Procedure. See 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.1 et seq. An inmate initiates the grievance procedure by filing a written grievance complaint with the Inmate Grievance Resolution Committee ("IGRC"). Id. § 701.5(a). The IGRC has sixteen calendar days after the grievance is filed in which to resolve the matter informally. Id. § 701.5(b). Next, the inmate can appeal the IGRC's determination to the superintendent of his or her facility. Id. § 701.5(c). Finally, an inmate can appeal the superintendent's determination to the Central Office Review Committee ("CORC"), which must decide the appeal within thirty calendar days from the date the appeal is received. Id. § 701.5(d).

An inmate plaintiff's failure to exhaust administrative remedies may be excused when those remedies are unavailable. See Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006). For PLRA purposes, a remedy is unavailable when it is "officially on the books, [but] is not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016). This occurs on the rare occasions when (i) an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" and "so confusing that no reasonable prisoner can use" it; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859–60.

6

B. Analysis

Plaintiff acknowledges he did not exhaust administrative remedies before commencing this lawsuit. (See Am. Comp. ¶¶ 25–27). However, he argues his failure to exhaust should be excused because the prison grievance procedure was unavailable to him for the following reasons: (i) Sing Sing officials intimidated plaintiff by repeatedly searching his cell and threatening to move him to a different cell if he kept complaining about the temperature; (ii) the prison grievance system allegedly has a 17 to 25 month backlog; (iii) plaintiff's "injuries are ongoing and health threatening"; (iv) DOCCS has no procedure explaining what a grievant should do if he or she does not receive a timely response to an appeal of a denial of a grievance; and (v) Supt. Capra allegedly told plaintiff on March 5, 2019, that the windows would remain open. (Id. at 7).

The Court rejects plaintiff's arguments.

As for any alleged intimidation, plaintiff admits he filed a grievance on October 15, 2018, concerning the temperature in his cell. (See Doc. #35 at 2–3). Instead of waiting for the grievance process to run its course, he filed this action just two days later. In light of New York's multistep prison grievance procedure and plaintiff's factual allegations, it is implausible that plaintiff exhausted his administrative remedies in that short time. See, e.g., Bello v. Long, 2016 WL 1690695, at *2 (S.D.N.Y. Apr. 25, 2016).[2] Moreover, affidavits submitted by plaintiff of other prisoners describing allegedly cold conditions at Sing Sing, which plaintiff argues further support his argument that intimidation rendered the grievance process unavailable to him, do not, in fact, describe any intimidation by prison officials. (See Supp. Compl. Exs. 4–6).

---

[2] The Court will provide pro se plaintiff copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Thus, plaintiff plainly "was not deterred from exhausting; he simply did not exhaust in accordance with the procedures." Riles v. Buchanan, 656 F. App'x 577, 581 (2d Cir. 2016) (summary order).

Nor does DOCCS's alleged grievance backlog, or the allegedly "ongoing and health threatening" nature of plaintiff's injuries, render plaintiff's administrative remedies unavailable. (Am. Compl. ¶ 25). At this early stage of the case, the Court must accept plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor. Thus, for purposes of this motion, the Court assumes that plaintiff's grievance may have concerned a potential threat to his health, and that the backlog alleged by plaintiff does in fact exist. But DOCCS regulations provide for this scenario. They state:

> The IGP supervisor shall refer any grievance of an emergency nature directly to the appropriate response level (superintendent or CORC) having authority to issue an immediate or expeditious and meaningful response. An emergency shall include, but is not limited to, a situation, action, or condition in which an inmate's or an employee's health, safety, or welfare is in serious threat or danger. The supervisor will determine if a grievance falls within this category.

7 N.Y.C.R.R. § 701.6(m). This procedural safeguard exists to ensure urgent grievances receive quick attention. Accordingly, neither the alleged backlog nor the alleged nature of plaintiff's injuries rendered the grievance system unavailable to plaintiff before he commenced this case.

Next, plaintiff's argument that certain aspects of the grievance appeal process are opaque is of no consequence, because plaintiff filed this action before receiving even a first-level determination of his grievance, let alone an untimely resolution on appeal.

Finally, plaintiff argues the grievance appeal process was unavailable to him because if plaintiff's grievance were denied by the IGRC, plaintiff's initial appeal would have been denied by Supt. Capra, who allegedly told plaintiff in person that the windows would remain open. This

8

argument is entirely speculative. Moreover, it has no bearing on plaintiff's ability to appeal to CORC a denial by Supt. Capra of plaintiff's initial grievance appeal.

For all these reasons, plaintiff's administrative remedies were neither exhausted nor unavailable when this case began. Thus, plaintiff's Eighth Amendment claim is dismissed.

III.     Retaliation Claims

To the extent plaintiff claims one or more defendants retaliated against him in violation of the First Amendment, that cause of action must likewise be dismissed.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected speech and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

Courts "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295. Accordingly, a prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

Liberally construed, plaintiff's submissions allege retaliation in the form of repeated searches of his cell, and when a "John Doe" correction officer allegedly told plaintiff he would

9

be transferred to a cell without an open window in front of it if he continued complaining that a window near his cell was making him cold. However, "a retaliatory cell search" is not a cognizable adverse action and therefore "is insufficient to support a First Amendment retaliation claim." Salahuddin v. Mead, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases). And as defendants note in their memorandum of law supporting dismissal, a John Doe officer's purported statement that if plaintiff complained about an open window, "he would be moved away from the window he was complaining about" plainly does not amount to a cognizable adverse action. (Doc. #32 at 5).

Accordingly, the Court dismisses plaintiff's First Amendment retaliation claims.[3]

IV.  State-Law Negligence Claim

Pursuant to 28 U.S.C. § 1367(c)(3), having dismissed plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law negligence claim against the maintenance supervisor at Sing Sing. Thus, the Court dismisses that claim without prejudice.

V.  Motion for Leave to File Supplemental Complaint

The Court has considered the allegations in the proposed supplemental complaint and nonetheless concluded the case must be dismissed. The Court therefore denies as futile plaintiff's motion for leave to file the proposed supplemental complaint. See, e.g., Motorola Credit Corp. v. Uzan, 388 F.3d 39, 65 (2d Cir. 2004).

---

[3] For the avoidance of doubt, the Court notes that to the extent plaintiff asserts a claim for denial of access to the courts, any such claim "is belied by the fact of [plaintiff] bringing this lawsuit," Alvarado v. Westchester County, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014), and must therefore be dismissed. And to the extent plaintiff asserts a claim for denial of access to the prison grievance system, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

VI.  Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

However, leave to amend may "properly be denied for . . . futility of amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). This holds true even when a plaintiff proceeds pro se. See, e.g., Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care & Makeup, 216 F. Supp. 3d 328, 336 (S.D.N.Y. 2016).

Liberally construed, the amended complaint contains no allegations suggesting plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, repleading would be futile because the problems with plaintiff's claims are substantive, and supplementary or improved pleading would not cure their deficiencies. Moreover, plaintiff has already amended the complaint.

The Court therefore declines to grant plaintiff leave to amend the complaint a second time.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

Plaintiff's motion for leave to file a supplemental complaint is DENIED.

The Clerk is directed to terminate the pending motions (Doc. ##22, 30) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

Dated: August 7, 2019
       White Plains, NY

                                            SO ORDERED:

                                            _____
                                            Vincent L. Briccetti
                                            United States District Judge